IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| MARCUS CURETON, *et al.*, | * | Criminal No. RDB-16-0087 |
| Defendants. | * | |
|  | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM ORDER

For the reasons stated on the record at this Court's February 28, 2017 hearing, and further explained in the Memorandum Order dated March 1, 2017 (ECF No. 139), Counts 14, 15 & 16 of the Indictment as to Defendant Marcus Cureton ("Cureton") have now been severed from the remaining counts in this case. Cureton will proceed to trial on Counts 14, 15 & 16 alone on March 20, 2017.[1]   Currently pending before this Court is Cureton's Motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF No. 108).  At this Court's hearing, Defense counsel verified on the record that, with respect to Count 14, 15 & 16[2],   Cureton seeks only to suppress evidence seized pursuant to the following five warrants:

1.     A December 10, 2015 Search Warrant for Information Associated with Cellular Telephone Number 443-416-0378, a Number Attributed to Cureton

---

[1] Kevin Reynolds, a Co-Defendant of Cureton, was also named in Counts 14 and 16 of the Indictment, but has subsequently pled guilty before this Court to Aiding and Abetting Hobbs Act Robbery (Count 16), in exchange for the Government dismissing Count 14 as to Reynolds.  *See* J., p. 1, ECF No. 104. On January 25, 2017, this Court sentenced Reynolds to 77 months imprisonment, with credit for time served, followed by a period of three years supervised release. *Id.* at p. 2-3.

[2] As discussed *infra*, all pending Motions in this case remain pending with respect to those remaining counts for which a trial date has not yet been set, including Counts 1, 2, 3, 8, 9 & 17 against Cureton.

1

Case 1:16-cr-00087-RDB   Document 140   Filed 03/06/17   Page 2 of 13

(ECF No. 114-26), Issued by United States Magistrate Judge Timothy J. Sullivan of this Court;

2.    A <u>December 18, 2015 Search & Tracking Warrant</u> for Cellular Telephone Number 443-416-0378 (ECF No. 114-22), Issued by United States Magistrate Judge Beth P. Gesner of this Court;

3.    A <u>December 22, 2015 Search Warrant</u> to Search Cureton's Home at 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland 21217 (ECF No. 114-27), Issued by United States Magistrate Judge Beth P. Gesner of this Court;

4.    A Series of <u>December 30, 2015 Search Warrants</u> for Six Cellular Telephones Seized During the Search of Cureton's Home (ECF No. 114-28), Issued by United States Magistrate Judge J. Mark Coulson of this Court; and

5.    A <u>February 9, 2016 Search Warrant</u> Authorizing Collection of a DNA Sample from Cureton (ECF No. 114-29), Issued by United States Magistrate Judge Timothy J. Sullivan of this Court.[3]

Specifically, Cureton contends that "the warrants fail to allege sufficient probable cause that evidence of a crime would be found within the apartment and cell phone or sufficient probable cause that his person or his whereabouts should have been tracked and

---

[3] At this Court's February 28, 2017 hearing, Government counsel indicated that they may seek to introduce evidence obtained as a result of one additional search warrant (ECF No. 114-13), issued by a Judge of the District Court of Maryland for Baltimore City on October 30, 2015 and authorizing the search of a cellular phone dropped by one of Cureton's Co-Defendants at the scene of a robbery. Counsel for Cureton stated on the record that Cureton does not seek to challenge that warrant. Even if Cureton did seek to suppress evidence obtained as a result of that warrant, his Motion would fail. A criminal Defendant does not have standing to challenge a warrant for the search of a cellular phone abandoned by his Co-Defendant at the scene of a crime. *See, e.g., California v. Hodari D.*, 499 U.S. 621, 629 (1991) (finding no reasonable expectation of privacy in containers or contraband dropped or abandoned by a suspect fleeing from law enforcement officials).

searched." Mot., p. 2, ECF No. 108. He further claims that the "warrants also fail to establish a sufficient nexus between alleged criminal conduct and the place to be searched." *Id.* At the February 28, 2017 hearing, counsel indicted to this Court the Defendant's intent to rest on the pleadings with respect to this Motion. Having reviewed the parties' submissions, this Court finds that no further hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated herein, Defendant Marcus Cureton's Motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF No. 108) is DENIED as to all five warrants. All five warrants challenged by Cureton were constitutionally valid and supported by probable cause. Cureton's Motion remains pending as to any additional warrants he may seek to challenge in connection with Counts 1, 2, 3, 8, 9 & 17 of the Indictment, the remaining counts against Cureton that shall be scheduled for a separate trial.

STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court of the United States "has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (citing *Johnson v. United States*, 333 U.S. 10, 13—14 (1948)). "An affidavit supporting a warrant that authorizes a search or seizure 'must provide the magistrate with a substantial basis for determining the existence of probable cause' in light of the totality of the circumstances." *United States v. Marion*, 547 F. App'x 283, 286 (4th Cir. 2013) (per curiam) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). To establish

probable cause, " 'the facts presented to the magistrate need only 'warrant a [person] of reasonable caution' to believe that evidence of a crime will be found.' " *Id.* (quoting *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992) (per curiam)).

The Fourth Amendment further "requires a sufficient nexus between the criminal conduct, items to be seized, and the place to be searched." *United States v. Abraham*, 213 F. App'x 240, 247 (4th Cir. 2007) (citing *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988)). The Fourth Circuit has held "that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant 'contains no factual assertions directly linking the items sought to the defendant's residence.' " *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (quoting *United States v. Servance*, 394 F.3d 222, 230 (4th Cir. 2005)). "[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *Anderson*, 851 F.2d at 729. The United States Court of Appeals for the Fourth Circuit has held that " 'a magistrate's assessment of the facts when making a determination of probable cause" should be afforded " 'great deference.' " *Id.*

ANALYSIS

## I.     This Court will Not Conduct a *Franks* Hearing as to the Challenged Warrants

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant "may obtain an evidentiary hearing concerning the veracity of the statements in an affidavit in support of a search warrant." *United States v. Wilford*, 961 F. Supp. 2d 740, 773 (D. Md. 2013). Counsel for Cureton indicated to this Court on the record at the February 28, 2017 hearing that Cureton does not seek a *Franks* hearing with respect to the affidavits supporting the five challenged

4

warrants.  As some of the defendants in this case had requested a *Franks* hearing, this Court notes that there is no basis to conduct a *Franks* hearing in this case.  A criminal defendant is only entitled to a *Franks* hearing if he can both make a "substantial preliminary showing" that the affiant made a false statement in the affidavit "knowingly and intentionally, or with reckless disregard for the truth," and also show that the false statement itself was necessary to the determination of probable cause.  *Franks*, 438 U.S. at 155-56.  "The defendant carries a heavy burden in showing that a *Franks* hearing is necessary."  *United States v. Tyson*, 462 F. App'x. 402, 408 (4th Cir. 2012) (citation omitted).  This showing must be "more than conclusory" and must be accompanied by a detailed offer of proof.  *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990).  Cureton has made no showing whatsoever that the affidavits supporting the five challenged warrants, discussed herein, include false statements that were necessary to the determination of probable cause.  He raises only the boilerplate allegations recited *supra*.  Accordingly, this Court will not conduct a *Franks* hearing.

## II.   The <u>December 10, 2015 Search Warrant</u> for Information Associated with Cellular Telephone Number 443-416-0378, a Number Attributed to Cureton, Was Constitutionally Valid and Supported by Probable Cause

The December 10, 2015 warrant was issued by United States Magistrate Judge Timothy J. Sullivan of this Court.  As stated above, in assessing probable cause, this Court must afford great deference to the initial judicial officer's determination.  *See, e.g., United States v. Henry*, 673 F.3d 285, 289–90 (4th Cir. 2012). This Court reviews the known facts and circumstances and determines whether, based upon a common sense determination, there is a fair probability that evidence of a crime will be found.  *See United States v. Wellman*, 663 F.3d 224, 228 (4th Cir.2011).

In an affidavit in support of this warrant, FBI Special Agent Summer A Baugh ("Special Agent Baugh") carefully detailed an ongoing investigation between state and federal law enforcement into a series of armed commercial robberies. Aff., p. 1-2, ECF No. 114-26. Special Agent Baugh indicated that at the time of the warrant application two suspects had already been arrested, Cureton's Co-Defendants William McFadden ("McFadden") and Taeqwon Prater ("Prater"), but that authorities suspected additional suspects were involved. *Id.* at 3-5. Surveillance footage of several of the robberies featured individuals who did not match the appearance or description of McFadden or Prater. *Id.* at 5. Special Agent Baugh explained that one suspect had dropped a cellular phone at the scene of one particular robbery. *Id.* at 3-4. After recovering cell data for that phone pursuant to a separate warrant, police discovered that a series of calls were placed between that phone and the cellular telephone with number (443) 416-0378 (the "Target Phone" of the December 10, 2015 warrant) around the time of several known robberies. *Id.* at 3-4. Additional calls had been made between McFadden's cellular phone and the Target Phone around the time of several known robberies. *Id.* Special Agent Baugh revealed that historic cell data had shown the Target Phone in close physical proximity to several of the known robberies. *Id.* at 4. Accordingly, investigators sought further information with respect to that Target Phone number.

Cureton contends that the warrant application demonstrated no nexus between his alleged criminal conduct and the telephone number. Some nexus must exist between a defendant's criminal activities and the item to be searched, but that nexus may be shown by "the nature of the item and the normal inferences of where one would likely keep such

evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988).  Special Agent Baugh stated in her affidavit that the purpose of the warrant was to obtain government records and other information from Sprint PCS, the service provider of the Target Phone.  Aff., p. 1, ECF No. 114-26.  Based on her training and experience, Special Agent Baugh indicated in her affidavit that "individuals who commit violent crimes . . . [use] cellular telephones to plan and coordinate crimes."  *Id.* at 2.  Additionally, "[w]ireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems," "text message logs," and "subscriber information."  *Id.* at 8-9; Attachment B.  Special Agent Baugh expressed her belief that, for the reasons explained *supra*, this data would aid investigators in identifying additional suspects in the robberies.  *Id.* at 10.  In light of the totality of the circumstances, there was probable cause to support issuance of the search warrant.  Accordingly, Cureton's Motion is DENIED as to the December 10, 2015 Search Warrant (ECF No. 114-26).

III.  **The <u>December 18, 2015 Search & Tracking Warrant</u> for Cellular Telephone Number 443-416-0378 Was Constitutionally Valid and Supported by Probable Cause**

Following execution of the December 10, 2017 search warrant, investigators sought an additional warrant authorizing them to "employ an electronic investigative technique" (described in Attachment B to the warrant application) that would determine a more precise location of the Target Phone.  Aff., p. 1-2, ECF No. 114-22.  This warrant was issued by United States Magistrate Judge Beth P. Gesner.  By the time of this warrant application, an arrest warrant had already been issued for Cureton by the District Court of Maryland for Baltimore City.  *Id.* at 2.

In her affidavit in support of the warrant, Special Agent Baugh stated that Sprint had turned over records showing frequent contact between the Target Phone and McFadden's phone. *Id.* at 5. Records revealed that the Sprint account was registered to "STAR CARTER." *Id.* A review of law enforcement databases uncovered several addresses for Carter, including 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland 21217 as of October of 2015. *Id.* Special Agent Baugh indicated that Carter was the girlfriend of Cureton. *Id.* Several law enforcement officers had identified Cureton as the suspect in a surveillance tape of a December 9, 2015 robbery of a Subway in Baltimore. *Id.* at 6. Historic cell site data revealed that the Target Phone received a text message at the exact time of the robbery and that the phone was in close physical proximity to the site of the robbery. *Id.* A review of law enforcement databases indicated that Cureton was associated with the residence at 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland, 21217, based on credit bureau and other state records as of October of 2015. *Id.* at 7.

Special Agent Baugh indicated that law enforcement was capable of using various investigative techniques to establish the location of Cureton and the Target Phone, which Special Agent Baugh suspected Cureton might be using to plan more commercial robberies. *Id.* at 8-10. Based on this information, there was probable cause for the issuance of the December 18, 2015 warrant. Accordingly, Cureton's Motion is DENIED as to the December 18, 2015 Search Warrant (ECF No. 114-22).

**IV.   The December 22, 2015 Search Warrant to Search Cureton's Home at 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland 21217 Was Constitutionally Valid and Supported by Probable Cause**

Following issuance of the December 18, 2015 tracking warrant, law enforcement determined that Cureton was in the vicinity of the home at 1420 Pennsylvania Avenue,

Apartment 102, Baltimore, Maryland.    Aff., p. 7, ECF No. 114-27.    Accordingly, law enforcement sough a warrant to search that residence.  *Id.* at 1.  The December 22, 2015 warrant was also issued by United States Magistrate Judge Beth P. Gesner.

In her affidavit in support of the warrant, Special Agent Baugh detailed the factual basis that supported her belief that Cureton possessed "evidence, fruits, and instrumentalities" of Hobbs Act Robberies in 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland.  *Id.* at 1-6.  Special Agent Baugh detailed the investigative measures, discussed *supra*, that had linked Cureton to the robberies and to the residence, including the surveillance images of the Subway robbery that featured an individual several law enforcement officers recognized as Cureton.  *Id.*  Special Agent Baugh indicated that     cell site location information had linked Cureton to the vicinity of 1420 Pennsylvania Avenue for a sustained time period from December 19, 2015 to December 22, 2015.  *Id.* at 7. Investigators had obtained a copy of Cureton's Experian credit report which listed his address as 1420 Pennsylvania Avenue, Apartment 102.  *Id.*

Special Agent Baugh concluded, based on her "experience and expertise," that "suspects often conceal items used during . . . robberies in their homes."  *See United States v. Brown*, 96 Fed. Appx. 112, 113 (4th Cir. 2004) (experienced FBI agent's description of nexus between robber and residential premises sufficient to establish probable cause) (unpublished).   The December 22, 2015 warrant particularly described the things to be seized and the places to be searched.  Attachment B to the warrant application included a list of "items to be Seized," which included "Clothing connected to the Robbery" and "Cellular Telephones."  *Id.* at Attach. B.   Attachment A to the warrant application included a

description of the building at 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland, 21217, including a photograph of the exterior of the building. *Id.* at Attach. A.

Based on the totality of the circumstances, the December 22, 2015 warrant to search Cureton's home at 1420 Pennsylvania Avenue, Apartment 102, Baltimore, Maryland 21217 was a constitutionally valid warrant, supported by probable cause. Cureton offers no facts to the contrary in his boilerplate motion. Accordingly, Cureton's Motion is DENIED as to the December 22, 2015 Search Warrant (ECF No. 114-27).

**V.   The <u>December 30, 2015 Search Warrants</u> for Six Cellular Telephones Seized During the Search of Cureton's Home Was Constitutionally Valid and Supported by Probable Cause**

Following Cureton's arrest and the search of his home at 1420 Pennsylvania Avenue, investigators sought a warrant to search six phones seized during that search. Aff., p. 1, ECF No. 114-28. That warrant was issued by United States Magistrate Judge J. Mark Coulson of this Court.

In her application for the warrant, Special Agent Summer Baugh summarized the investigative background of this case, discussed *supra*, ultimately leading to the arrest of Cureton and Co-Defendant Reynolds on December 23, 2015 in Baltimore. *Id.* She explained that investigators now sought a warrant for a forensic examination of six phones recovered from a search of Cureton's home. *Id.* at 2. Based on training and experience, Special Agent Baugh indicated that "[i]ndividuals committing Hobbs Act offenses frequently use telephones and other digital storage devices to maintain telephone number 'contact lists' of individuals who may have assisted in the planning of the robbery and other criminal activities, and these devices often retain and store GPS data reflecting the physical location

of the phones." *Id.* at 3-4.  Accordingly, law enforcement sought to examine the seized phones for evidence of the alleged robberies.  *Id.* at 7.  Attachment A to the warrant application described each phone in detail.  *Id.* at Attach. A.  Attachment B itemized the electronic data sought; data relating in time and substance to the robberies under investigation, including names, phone numbers, addresses, photographs, and videos.  *Id.* at Attach. B.  Based on the totality of the circumstances, there was probable cause for issuance of the December 30, 2015 search warrant.  Aside from his boilerplate claims recited *supra*, Cureton has provided no evidence or authority to the contrary.  Therefore, Cureton's Motion is DENIED as to the December 30, 2015 Search Warrant (ECF No. 114-28).

## VI.   The <u>February 9, 2016 Search Warrant</u> Authorizing Collection of a DNA Sample from Cureton Was Constitutionally Valid and Supported by Probable Cause

Defense counsel has indicated to this Court on the record her understanding that this warrant relates to "uncharged conduct."  However, to the extent Cureton still seeks to suppress evidence seized pursuant to this warrant, his motion is denied.  The February 9, 2016 warrant was issued by United States Magistrate Judge Timothy J. Sullivan of this Court. In her warrant application, Special Agent Summer Baugh indicated that investigators sought DNA samples "for comparison purposes in the form of hair and saliva" from Cureton.  Aff., p. 1, ECF No. 114-29.  Specifically, investigators sought the samples for comparison with physical evidence collected during the course of the investigation, discussed *supra*, including a handgun, black masks, a jacket, a revolver, and other clothing and shoes obtained from searches of the residences of Cureton and his Co-Defendants.  *Id.* at 3-5.  She indicated that the clothing was consistent with clothing worn by the robbers in surveillance footage of a December 21, 2015 robbery.  *Id.* at 5.  Based on this information, there was probable cause

supporting the issuance of the February 9, 2016 warrant.  Accordingly, Cureton's Motion is

DENIED as to the February 9, 2016 Search Warrant.

**VII.  Even if the Challenged Warrants Were Not Supported by Probable Cause, or Were Otherwise Invalid, The Evidence Obtained Pursuant to Those Warrants Would Not Be Suppressed Because of the *Leon* Good-Faith Exception**

In *United States v. Leon*, 468 U.S. 897, 926 (1984), the Supreme Court of the United

States held that evidence obtained from an invalid warrant will only be suppressed if "the

officers were dishonest or reckless in preparing their affidavit or could not have harbored an

objectively reasonable belief in the existence of probable cause."  In *United States v. Wilhelm*,

80 F.3d 116 (4th Cir. 1996), the United States Court of Appeals for the Fourth Circuit

summarized the four situations in which the *Leon* good-faith exception does not apply:

> First, when the warrant is based on an affidavit containing "knowing or reckless falsity;" second, when the magistrate has simply acted as a "rubber stamp" for the police; third, when the affidavit does not "provide the magistrate with a substantial basis for determining the existence of probable cause;" and finally when the warrant is so "facially deficient" that an officer could not reasonably rely on it.

*Wilhelm*, 80 F.3d at 121 (quoting *Leon*, 468 U.S. at 923).

In this case, all searches were conducted pursuant to search warrants issued by United

States Magistrate Judges of this Court.  Cureton has provided no indication that the

affidavits submitted by Special Agent Summer Baugh contained falsity, that the United States

Magistrate Judges of this Court acted as "rubber stamps," or that the affidavits were "facially

deficient" or otherwise failed to provide a substantial basis on which the Magistrate Judges

could make a finding of probable cause.  Therefore, even if any of the five challenged

warrants were constitutionally deficient, the evidence obtained pursuant to those warrants

would not be suppressed because of the *Leon* good-faith exception.

## **CONCLUSION**

For the reasons stated above, it is this 6th day of March, 2017, HEREBY ORDERED that:

Defendant Marcus Cureton's Motion to Suppress Evidence Seized Pursuant to Search Warrants (ECF No. 108) is DENIED as to the December 10, 2015 Search Warrant (ECF No. 114-26); the December 18, 2015 Search & Tracking Warrant (ECF No. 114-22); the December 22, 2015 Search Warrant (ECF No. 114-27); the December 30, 2015 Search Warrants (ECF No. 114-28); and the February 9, 2016 Search Warrant (ECF No. 114-29). All five warrants challenged by Cureton were constitutionally valid and supported by probable cause. Cureton's Motion remains pending as to any additional warrants he may seek to challenge in connection with Counts 1, 2, 3, 8, 9 & 17 of the Indictment, the remaining counts against Cureton that have not yet been scheduled for trial.

_____/s/_____
Richard D. Bennett
United States District Judge
